(135 So. 414)

## FULTON v. STATE.

6 Div. 896.

Court of Appeals of Alabama.
June 16, 1931.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellant.

Thos. E. Knight, Jr., Atty. Gen. and Jas.
L. Screws, Asst. Atty. Gen., for the State.

RICE, J.

Appellant was convicted of the offense of violating the "Five Gallon Law" (Gen. Acts of Alabama 1927, p. 704).

We will take a brief summary of the evidence from appellant's brief, filed on this appeal. It is:

"During the month of April, 1930, two deputy Sheriffs of Jefferson County, namely, Lamb and Ricalls, were parked in an automobile in a side road that led into the Short Creek Road, in Jefferson County, and within the jurisdiction of the Bessemer Division of the Circuit Court of that county.

"The appellant came along the Short Creek Highway (Road), travelling in a Roosevelt Eight Sedan, with a woman riding in the front seat with him, and the automobile was being driven by the appellant.

"As the appellant's automobile approached the officers, one of the officers, while standing in the Short Creek Road, waved the appellant down with a flashlight and the appellant stopped his automobile with the headlights of his car shining brightly and directly in the face of the officers.

"The State's evidence tended to show that after the appellant had stopped his automobile he backed the same down the road and as he did so the officer that was standing in the road walked toward the automobile directly

. 357

toward the headlights of the car, which were still shining directly into the officer's face. This officer testified further that as the appellant was backing his automobile down the highway he threw from the seat of the car three five gallon cans of whiskey, and after he had stopped the automobile both of the officers walked up to the car and found in the rear (that is, the rear compartment of same) of the automobile four other five gallon cans of whisky.

"The appellant's testimony was to the effect that he was driving this Short Creek Road in his automobile, and that when he reached the point where the officers had parked their car, one of the officers was out in the highway and flagged him down, and that he stopped as quickly as he could. That after the appellant had stopped, one of the officers came up to his car, which was then standing still, and asked the appellant where the liquor was, and appellant told him he did not have any liquor. That the officer then looked under the back seat, using his flashlight; appellant and the girl who was riding with him in his automobile got out of the car, and the officer looked under the front seat. Appellant denied having any liquor and then this officer walked around a little piece behind the car and the officer found some liquor (whisky) and told his Buddy 'Here it is, he done threw it out.'

"That they (the officers) then put appellant in their car and went down the road and got the liquor and put the whiskey in appellant's car, and carried it, and appellant, to jail.

"Appellant emphatically denied (we interpolate—quoting from his testimony—"Clear before God." !) that he had any ownership (of), interest (in), or control over the whiskey found, or had any knowledge that it was there on the side of the road; also denied that he threw any whiskey out (of his car) at all, or backed his car up after he had stopped it."

The above summary indicates that the issues in the case were very simple, and, of course, were for the jury.

If the jury believed the state's testimony beyond a reasonable doubt, which they evidently did, it was their duty to return a verdict of guilty against the appellant, which they likewise did.

If they had a reasonable doubt of his guilt, from a consideration of the whole evidence, it was, of course, their duty to give appellant the benefit of it, and acquit him.

That was the whole case. But seldom has a record here indicated that the patience of the trial judge had been imposed upon to the extent apparent in this case, by the constant wrangling, bickering, bantering, and raillery, between counsel representing the state, and those representing the defendant (appellant).

358

So far as we can discern, after careful study, in the light of the excellent briefs, both on behalf of the state and the appellant, which are before us, the learned trial judge made no erroneous ruling throughout the taking of the testimony, and, by his rulings, successfully kept the rights of the appellant from being injured by the spirited contest between the counsel in the case, over entirely irrelevant matters.

We refrain from any caustic remarks directed at the solicitor prosecuting for the state, for the reason, that in undertaking to inject into the case perhaps the most extraneous matter (if indeed, there can be degrees in such), he had the full consent, co-operation, and approval, of the appellant's own counsel; this on the apparent theory that said appellant's counsel conceived that he might aid his client by "getting the best" of the situation thus created by the solicitor.

It appears useless for us to discuss, seriatim, the various rulings made during all this wrangling between counsel.

■ The written charges requested by, and refused to, appellant, have each been examined.

The substance of each of them was fully given to the jury in the trial court's very careful and explicit oral charge. And in said oral charge the court was at much pains to eliminate from the jury's consideration everything with reference to the hereinabove referred to cross-table bickering between counsel.

We are convinced that appellant had a fair trial, and that the judgment of conviction ought to be, as it is, affirmed.

Affirmed.